Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1378 | **DATE** | April 19, 2002 |
| **CASE TITLE** | *Moriarty v. Adinamis* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached memorandum and order, the present case is not barred by claim preclusion. Adinamis' motion for summary judgment is, therefore, denied. Enter memorandum and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | APR 24 2002 | |
| | Notified counsel by telephone. | date docketed | 22 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | |
| RTS | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS J. MORIARTY, Trustee on behalf of the Teamsters Local Union No. 727, I.B.T. Pension Trust, and the Teamsters Local Union No. 727 Health and Welfare Fund, and the Teamsters Local Union No. 727 Legal Assistance Plan,<br>Plaintiff,<br><br>v.<br><br>ADINAMIS FUNERAL DIRECTORS, LTD., an Illinois Corporation,<br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | DOCKETED<br>APR 2 4 2002<br><br>No. 01 C 1378 |

## MEMORANDUM AND ORDER

Plaintiff Thomas J. Moriarty ("Moriarty") is the trustee of Local Union No. 727, the I.B.T. Pension Trust, and the Teamsters Local Union No. 727 Health and Welfare Fund and Legal Assistance Plan. He filed this action pursuant to § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and § 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e)(2), seeking a judgment compelling defendant Adinamis Funeral Directors, Ltd., ("Adinamis") to pay delinquent contributions owed to the Funds. Adinamis has filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56, claiming that this suit is barred by an earlier action between the parties. For the following reasons, the court disagrees and the motion is denied.

I.  **Background**

   A.  **The Parties**

   Plaintiff Thomas J. Moriarty ("Moriarty") is a trustee and fiduciary of the Local Union No. 727, I.B.T. Pension Trust, and the Teamsters Local Union No. 727 Health and Welfare Fund

and the Local Union No. 727 Legal Assistance Plan (collectively, the "Funds"). As a trustee, Moriarty is authorized to collect employer contributions owed to the Funds. Adinamis operates in this judicial district and has been, at all times, an employer within the meaning of the LMRA and ERISA.

### B. Jurisdiction and Venue

Jurisdiction is proper under 28 U.S.C. § 1331 as this controversy arises under federal law, namely § 301(a) of the LMRA, 29 U.S.C. § 185(a), and § 502(a)(3) of ERISA, 29 U.S.C. § 1132(e)(2). Venue is proper pursuant to 28 U.S.C. § 1391(b), as Adinamis is an Illinois corporation. *See* 28 U.S.C. § 1391(c).

### C. Local Rules

Under the local rules, a party seeking summary judgment must file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law" consisting of "short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." Local Rule 56.1(a)(3). In the present case, Adinamis, the movant, has properly filed a statement of facts pursuant to Local Rule 56.1(a)(3). So far, so good.

Local Rule 56.1(b) requires that a responding party submit a "concise response" to the movant's statement, which must contain "[a] response to each numbered paragraph in the moving party's statement, including in the case of any disagreement, specific references to affidavits, parts of the record, and other supporting materials relied upon . . . ." Local Rule 56.1(b)(3)(A). Local Rule 56.1(b) also requires the responding party to submit "a statement,

2

consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including reference to the affidavits, parts of the record, and other supporting materials relied upon . . . . " Local Rule 56.1(b)(3)(B). Finally, Local Rule 56.1(b) provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." *Id.*

Although the facts of this case are simple and straightforward, Moriarty has failed to properly comply with the local rules. Specifically, in his responses to Adinamis' statement of facts, he commingles additional facts into his responses instead of simply admitting or denying what Adinamis has averred and raising the additional facts in a separate Local Rule 56.1(b)(3)(B) statement of additional facts.

Failure to comply with Local Rule 56.1 is not a "harmless technicality." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994). A party who does not properly contest the opposing party's Rule 56.1(a)(3) facts is considered to have admitted those facts, to the extent that they are properly supported by the record. Local Rule 56.1(b)(3); *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1312 (7th Cir. 1995); *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 333 (7th Cir. 1993).

Although Moriarty improperly comingled additional facts into his response to Adinamis' statement of fact, he does not dispute any of Adinamis' facts. Thus, the format of Moriarty's 56.1(b)(3)(A) response is incorrect but does not inure to his detriment. However, the same cannot be necessarily said for Adinamis' failure to follow the local rules. Moriarty filed a statement of additional facts pursuant to Local Rule 56.1(b)(3)(B). The moving party is entitled to file "a concise reply in the form prescribed in ... [56.1(b)(3)] for a response." Local Rule 56.1(a)(3). However, "[a]ll material facts set forth in the statement filed pursuant to section

3

(b)(3)(B) will be deemed admitted unless controverted by the statement of the moving party." Local Rule 56.1(a)(3).

Adinamis did not respond to Moriarty's Local Rule 56.1(b)(3)(B) statement of additional facts. Accordingly, all of the facts raised by Moriarty in his Local Rule 56.1(b)(3)(B) statement of additional facts are deemed admitted to the extent that they are supported by the record. With that caveat, the following facts are derived from the parties' submissions.

### D. Facts

The following facts are undisputed unless otherwise noted.

#### 1. *Moriarty I*

On July 8, 1998, Moriarty, in his capacity as trustee of the Local Union No. 727, I.B.T. Pension Trust, and the Teamsters Local Union No. 727 Health and Welfare Fund and the Local Union No. 727 Legal Assistance Plan – the same funds involved in the present action – sued Adinamis in a suit captioned *Moriarty v. Adinamis Funeral Directors, Inc.*, No. 98 C 4139 ("*Moriarty I*"). Like the present suit, *Moriarty I* was brought under § 301(a) of the LMRA, 29 U.S.C. § 185(a), and § 502(a)(3) of ERISA, 29 U.S.C. § 1132(e)(2).

In *Moriarity I*, Moriarty claimed that Adinamis had failed to submit certain remittance reports to the Health and Welfare Fund and Pension Plan, for January of 1997, February of 1998, and June through September of 1998. He thus sought to compel Adinamis to: (1) file the corresponding remittance reports; (2) pay delinquent contributions owed to the Funds, together with interest and liquidated damages as provided by the collective bargaining agreement(s) and trust agreements; (3) pay reasonable attorneys' fees and costs; and (4) grant such other relief as the court deemed just and equitable.

4

Because Adinamis failed to answer or otherwise respond to the complaint, Moriarty filed a motion for entry of a default judgment. However, with respect to damages, Moriarty did not perform an audit of Adinamis' books and records. Instead, to determine the amount of contributions Adinamis owed the Funds for January of 1997, February of 1998, and June through September 1998, William Coli, the Funds' administrator, extrapolated the number of employees Adinamis had employed in the past by the monthly contribution rate detailed in the labor agreements between the Funeral Directors Services Association of Greater Chicago and Teamsters Local No. 727.

A $8,549.50 judgment was ultimately entered against Adinamis in *Moriarity I*. This amount represented contributions, interest and liquidated damages due the Funds for January of 1997, February of 1998, and June through September of 1998 as estimated by Coli, as well as attorneys' fees and court costs. Adinamis did not appeal.

On February 27, 2001, Moriarty filed the present action (*"Moriarty II"*) pursuant to § 301(a) of the LMRA, 29 U.S.C. § 185(a), and § 502(a)(3) of ERISA, 29 U.S.C. § 1132(e)(2), seeking a judgment compelling Adinamis to pay delinquent contributions owed to the Funds for the period April 1, 1990 through December 31, 1999. Moriarty also sought interest, liquidated damages and attorneys' fees. *Moriarty II* arises from a July 31, 2000, audit of Adinamis, which revealed delinquencies totaling: $33,049.74 to the Health and Welfare Fund, $22,485.63 to the Pension Fund, and $100.06 to the Legal Assistance Plan.[1]

---

[1] Moriarty commingles this fact into his response to a paragraph in Adinamis' 56.1(a)(3) statement, which states simply that *Moriarty II* was filed. (Adinamis' Motion for Summary Judgment, Facts at ¶ 4; Moriarty's 56.1(b)(3)(A) Statement at ¶ 4). However, because the facts concerning the audit are plainly evident and undisputed, and because the audit and its findings are essential to resolve the parties' arguments, the court has included this information here.

## II. Discussion

Adinamis' motion for summary judgment poses only one question: is *Moriarty II* barred by the doctrine of claim preclusion? Adinamis contends that it is because the cause of action and the parties are the same and there was a final judgment on the merits in *Moriarty I*. Unsurprisingly, Moriarity disagrees, contending that claim preclusion is inapplicable because the July 31, 2000 audit, which led to this action, picked up delinquencies occurring after the judgment in *Moriarty I*. According to Moriarty, claim preclusion thus does not bar this action because the identities of the claims are different.

### A. Standard on a Motion for Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading"; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992).

### B. Claim Preclusion

The doctrine of claim preclusion dictates that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were raised or could have been raised in the original action in another subsequent action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). In order for claim preclusion to apply to a federal action,

6

"three elements must be met: (1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1034 (7th Cir. 1997).

Only the first prong of this test is at issue, as Moriarty correctly concedes that the second and third prongs have been met. The court agrees, as the parties are the same and a final judgment was entered in *Moriarty I*. *See Brown v. J.I. Case Co.*, 813 F.2d 848, 854 (7th Cir. 1987) (identity of parties element satisfied where plaintiff and defendant remain the same); *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180 (7th Cir. 1994) (a default judgment is a final judgment on the merits).

But are the claims in *Moriarty I* and *Moriarty I* the same? "A claim has "identity" with a previously litigated matter if it arises from the same 'core of operative facts' as that earlier action." *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 339 (7th Cir. 1995) (internal citations omitted). Put another way, "[a] claim is deemed to have 'identity' with a previously litigated matter if it is based on the same, or nearly the same, factual allegations arising from the same transaction or occurrence." *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996). A party must, therefore, bring all of her claims arising from a single transaction in one suit or lose those claims forever. *See id.* A new case is nevertheless permissible if a new wrong occurs. *Supporters to Oppose Pollution, Inc. v. Heritage Group*, 973 F.2d 1320, 1326 (7th Cir. 1992). Likewise, a party may initiate new litigation in order to assert a claim that could not have been presented in the first action. *Id.*

According to Adinamis, *Moriarty II* (which seeks contributions for April of 1990 through December 31, 1999) arises out of the same core of operative facts as *Moriarty I* (which sought contributions for January of 1997, February of 1998, and June through September of 1998). On

7

the other hand, Moriarty asserts that *Moriarty II* is not precluded because: (1) it seeks, among other things, to recover delinquencies occurring after *Moriarty I* was decided; and (2) claim preclusion does not bar a subsequent action to collect contributions uncovered by a new audit because the audit effectively creates a new set of operative facts.

### 1. Post-Judgment Claims

The parties disagree as to whether *Moriarty II* seeks delinquencies for the time period commencing after the judgment in *Moriarty I* but agree that the July 31, 2000 audit is accurate. The audit reveals no discrepancies between Adinamis' payroll records and contributions reported and paid after the time periods covered by *Moriarty I* (January of 1997, February of 1998, and June through September of 1998) as the last discrepancies occurred in February of 1998. Accordingly, because nothing in the agreed-to factual record suggests that any discrepancies occurred after the judgment in *Moriarty I*, Moriarty's first argument is unpersuasive.

### 2. Impact of the Audit on the Core of Operative Facts

Moriarty alternatively asserts that claim preclusion does not bar a subsequent action to recover contributions from Adinamis because the audit effectively creates a functionally different and thus new claim. In response, Adinamis contends that the Seventh Circuit has adopted the transactional approach to claim definition, and that, under this approach, the claims asserted in *Moriarty I* and *Moriarty II* are identical.

The transactional approach, which was first set forth in the Restatement (Second) of Judgments, is used to determine whether a second suit is in fact identical to a prior suit. *See Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986). The relevant inquiry under the transactional approach is whether the two actions arise out of the same core of operative facts. *Id.* This is a "decidedly fact-oriented" inquiry, *id.*, and the determination of "what factual

8

grouping constitutes a 'transaction'... [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage," Restatement (Second) of Judgments § 24(2) (1982).

The Seventh Circuit has not defined the contours of the transactional approach in a case involving an audit under similar circumstances (*i.e.*, where there is some temporal overlap between the two actions and no audit occurred in connection with the first action).[2] However, the most factually analogous case in this district – *Central States, S.E. and S.W. Areas Pension Fund v. Plymouth Concrete, Inc.*, 803 F. Supp. 169 (N.D. Ill. 1992) – supports the conclusion that a second suit to recover delinquent contributions to a pension fund *after* an audit is not barred by claim preclusion principles because it effectively arises out of different facts than an earlier suit seeking to collect delinquent contributions based on employee work history.

In *Plymouth Concrete*, a pension fund trustee filed a suit seeking delinquent contributions on the basis of employee work history for the period of July, 1990 through December, 1990. *Id.* The case settled, and the court dismissed it with prejudice. *Id.* at 171. Subsequently, after Plymouth's records were audited, the same trustee brought a suit seeking delinquent contributions for the period between December 27, 1987, and September 21, 1991. *Id.* at 170. Plymouth filed a motion for summary judgment, contending that the second suit was barred by the doctrine of claim preclusion because it arose of the same transaction as the first. *Id.*

---

[2] Specifically, it will be recalled that *Moriarity I* sought contributions for January of 1997, February of 1998, and June through September of 1998 (although the last discrepancies occurred in February of 1998). On the other hand, in *Moriarty II*, contributions for April of 1990 through December 31, 1999, are at issue.

9

The *Plymouth Concrete* court applied the transactional test, and held that the second suit was not barred because the audit effectively created a new set of operative facts which could form the basis of a new, separate claim. *Id.* at 172-73. In reaching this conclusion, the court examined two cases that had dealt with the issue but reached opposite results, *I.A.M. Nat'l Pension Fund v. Industrial Gear Mfg. Co.*, 723 F.2d 944 (D.C. Cir. 1983) (second suit is not barred), and *May v. Parker-Abbot Transfer and Storage, Inc.*, 899 F.2d 1007 (10th Cir. 1990) (second suit is barred).

In *Industrial Gear*, the time period at issue in the two cases overlapped, but the two actions stemmed from two different audits: one audit sought contributions because the employer was behind in its payments, while the other sought additional monies based on the Fund's claim that the employer's contributions were inaccurate. 723 F.2d at 947-49. The court found that, "[a]lthough the time period for which the Fund alleges injury overlaps in the two suits, the two causes of action differ in that each asserts different rights, alleges different injuries, and arises from different facts." *Id.* at 948-49.

In reaching this conclusion, the court noted that the first action addressed delinquent contributions, based on information provided by the employer, while the second suit addressed inaccurate contributions based on an audit. *Id.* It also focused on the fact that the Fund has no independent way to verify information in an employer's monthly reports, and before it can file a suit claiming that contributions are inaccurate, it must conduct an audit. *Id.* at 948. On the other hand, it is facially obvious whether contributions are late. The court, therefore, distinguished between a claim based on failure to pay at all and a claim based on inaccurate payments, and found that the claim preclusion principles did not bar the second action.

10

In contrast, in *May*, a divided panel of the Tenth Circuit held that claim preclusion barred a pension fund from maintaining a second action to compel an audit and collect contributions. 899 F.2d at 1010. As the court explained, "[t]he contract provides remedies for late contributions and provides the Fund with audit powers to ensure that contributions are accurate. However, the existence of these two provisions within the contract does not justify two separate trips to the courtroom." *Id.* It thus concluded that the Fund should have challenged the alleged inaccuracy of the contributions when it challenged the timeliness of those contributions.

Importantly, the *May* court also analogized the pension contribution suits to breach of contract suits. *Id.* In the Tenth Circuit, a contract is a transaction, so under the transactional approach, "all claims of contractual breach not brought in an original action would be subject to bar of claim preclusion, so long as the breaches antedated the original action." *Id., citing Restatement of Judgments* § 62 comment h, at 250 ("All the breaches of a contract prior to the commencement of the suit are treated as a single cause of action"). Because the trust agreement which required the employer to make contributions is a contract, the *May* court held that all claims arising from the alleged breach of that contract for a particular time period had to be raised in a single action. *Id.* at 1010-11.

After reviewing these two cases, the *Plymouth Concrete* court noted that the contract analogy was unpersuasive because it failed to take the realities of the operations of modern day pension funds into account. 803 F. Supp. at 172. It pointed out that, "to hold that whenever the Fund believes it must sue to prod a lax or recalcitrant employer into submitting required reports or making payments shown as due on reports it has filed, it must conduct an audit of the employer's wage records or forever lose the right to complain of possible omissions or inaccuracies in the contributions owed by that employer, imposes an unfair burden on pension

11

funds while furthering none of the policies behind the doctrine of res judicata." *Id., quoting May*, 899 F.2d at 1011 (Logan, J., dissenting). Accordingly, the court held that the second suit arising after the audit effectively arose out of different facts than the first, so the second suit was not barred. *Id.* at 172-73.

The court finds this reasoning persuasive for two reasons: (1) it is consistent with the policies underlying the claim preclusion rules; and (2) it takes into account the realities of fund management. Res judicata and collateral estoppel exist to preclude relitigation of matters that have already been litigated or to preclude litigation of matters that should have been litigated previously. *See* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4403 at 11 (1981). They encourage reliance on existing decisions, bar vexatious or repetitious litigation, promote cost-effective litigation strategies, conserve the resources of the courts and the parties, prevent inconsistent decisions, and promote finality. *Id.* at 11-17.

As shown by this case, litigation regarding delinquent pension contributions need not arise from an audit. *Moriarity I* was filed when Adinamis failed to submit certain remittance reports, and damages were calculated based on labor agreements, as opposed to an audit. When a pension fund simply wishes to obtain reports or payments owing based on paperwork provided by the employer, it should not have to conduct an audit in order to preserve their right to challenge the amounts paid. In other words, forcing pension funds to conduct audits and otherwise fully litigate every possible claim for a certain time period once that time period is called into question for any reason will simply lead to the instigation of more litigation which may not even be unnecessary. This flies in the face of the principles underlying res judicata.

Second, the realities of fund management are such that the trustees are dependent upon employers' honesty and accuracy in reporting. *See Connors v. Hallmark & Son Coal Co.*, 935

12

F.2d 336, 342-43 (D.C. Cir. 1991). A pension fund has no way of knowing whether the employer's information is accurate and must, therefore, conduct periodic audits. *See Plymouth Concrete*, 803 F. Supp. at 172. The operative facts in a suit to compel payment based solely on information provided by the employer thus are fundamentally different from the operative facts in a suit to compel contributions after an audit reveals that the employer has failed to make all required contributions. *Id.*

In addition, this situation is more complex than an ordinary contractual arrangement. *See Plymouth Concrete*, 803 F. Supp. at 172. As noted above, the definition of "a single core of operative fact" turns on a fact oriented inquiry. *Car Carriers,* 789 F.2d at 593. Whether the facts are related in time, space, and/or motivation, form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations, business expectations, or usage are all relevant. Restatement (Second) of Judgments § 24(2).

The two cases here, while stemming from the same underlying contract, do not in fact arise from " a single core of operative fact" because an action premised on the right to prompt payment "arise[s] out of different facts, at a different time, and from a different motivation than a suit to compel an audit and to recover any deficiencies the audit reveals." *See id.*; *see also May,* 899 F.2d at 1011 (Logan, J., dissenting); *cf. Int'l Union of Operating Eng'rs—Employers Constr. Indus. Pension, Welfare and Training Trust Funds v. Karr,* 994 F.2d 1426, 1428 (9th Cir. 1993) (the right to accurate computation of payments arises from the same core of operative fact as the right to timely payments). Accordingly, the court finds that the present suit arises out of a different set of operative facts as *Moriarty I*. This means that this case is not barred by claim preclusion.

13

## III. Conclusion

For the above reasons, the court concludes that the present case is not barred by claim preclusion. Adinamis' motion for summary judgment is, therefore, denied.

DATE: 4-19-02

_Blanche M. Manning_
Blanche M. Manning
United States District Judge

01cv1378.sj